UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA VUKOVICH WOODWARD,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 2:13-cv-00048 MCE EFB<br><br><br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff Claudia Woodward ("Plaintiff") seeks loss of consortium damages under California law as a result of treatment provided to her husband, Stanley Woodward, by personnel at the Palo Alto Veteran's Administration Spinal Cord Injury Center ("VA") in 2009. Because the VA employees at issue were governmental employees, Plaintiff filed her action against the United States (hereinafter "the government"). The government now seeks summary judgment on grounds that Plaintiff has provided no expert evidence of any malpractice, as she must in order to assert a viable loss of consortium claim. For the reasons that follow, the government's motion for summary judgment is GRANTED.[1]

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefing in accordance with Local Rule 230(g).

# BACKGROUND[2]

As indicated above, Plaintiff's loss of consortium claim stems from treatment her husband received from the VA in 2009 that resulted in pressure sores developing on Mr. Woodward's lower back.  Mr. Woodward was attended to by Dr. Strayer during August and September of 2009.  He was also cared for by Dr. Linder from September 21, 2009, until his discharge on November 7, 2009.[3]

On January 9, 2013, Plaintiff filed her complaint against the government.  In the parties' Joint Status Report filed February 11, 2015, both sides agreed to exchange Rule 26(a) initial disclosures by March 31, and on March 31, 2015, the parties mutually agreed to extend that deadline to April 21, 2015.  Plaintiff nonetheless failed to provide the government with her initial disclosures by that date.  Plaintiff later failed to respond to various discovery propounded by the government, including requests for admissions.  Given those failures, the government filed a Motion to Dismiss (which alternatively requested summary judgment) on grounds that Plaintiff's lawsuit should be dismissed for failure to prosecute her claims.

Although Plaintiff's failure to respond to the government's request for admissions technically resulted in the matters at issue being admitted as a matter of law, the Court vacated the government's Motion to Dismiss in order to permit Plaintiff to file a Motion to Withdraw Admissions before the assigned magistrate judge and gave her ten days to do so.  However, Plaintiff's counsel mistakenly submitted the Motion to Withdraw Admissions to the wrong judge, and counsel was thereafter directed to file an *ex parte* application for an extension of time to file the motion because the ten-day deadline had expired.  Plaintiff's application for extension of time was ultimately accepted.  She was permitted to renotice her Motion to Withdraw Admissions before the assigned Magistrate

---

[2] The following of recitation of facts is taken, sometimes verbatim, from Defendant's Motion to Dismiss or, Alternatively, Motion for Summary Judgment, ECF No. 12-1, and Defendant's Motion for Summary Judgment, ECF No. 31.

[3] Mr. Woodward later passed away for unrelated reasons in 2012.

Judge no later than October 2, 2015.  Plaintiff's counsel was nonetheless "strongly admonished that no further failure to adhere to this Court's rules and deadlines will be tolerated."  ECF No. 24.  Ultimately, the parties stipulated that the admissions would be withdrawn.

On January 7, 2016, both sides designated expert witnesses.  Plaintiff disclosed herself as a non-retained expert regarding the effect Mr. Woodward's pressure sores had on his respiratory system.[4]  Plaintiff did not provide the government with expert written reports from her retained experts, Dr. Louie and Dr. Kirkland-Walsh.  Instead, Plaintiff only provided a brief overview of the subject matter the experts were expected to address.  Plaintiff's disclosures went on to state that Dr. Louie's and Dr. Kirkland-Walsh's "reports and previous testimony and compensation will follow," but no such follow-up information was ever provided.  Moreover, although Plaintiff also designated Drs. Linder and Strayer as non-retained experts, the government has since obtained declarations from both physicians stating that they in fact formed no expert opinion regarding the cause of Mr. Woodward's pressure sores during the course of their treatment.

On February 17, 2016, the government filed the Motion for Summary Judgment now before this Court.  Repeating his prior error and despite the court's clear admonishment to adhere to court rules in the future, Plaintiff again filed an opposition to the motion three weeks after the deadline set forth in the operative scheduling order.  Plaintiff's counsel states that the untimely opposition was filed late because he did not check the scheduling order.  Unbelievably, this was exactly the same mistake counsel previously made in failing to file a timely opposition to the government's initial motion.  In reply, the government urged the Court to deem the opposition untimely.  The body of Plaintiff's tardy opposition itself states only that Plaintiff would expand her own expert testimony to include standard of care, cause of pressure sores and breach of duty.[5]

---

[4] Plaintiff claimed that as a respiratory therapist she was qualified to provide expert opinion regarding these issues.

[5] On January 7, 2016, in Plaintiff's initial Expert Disclosure, she notified the government that she would personally provide expert testimony as to the cause of Mr. Woodward's pressure sores, and the

3

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[6]  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

///

---

effect they had on his respiratory system.  Then, on April 8, 2016, in a declaration submitted by Plaintiff in opposition to government's motion, Plaintiff declared that she would also be providing expert testimony regarding (1) the standard of care, (2) VA breached the standard of care by failing to provide Mr. Woodward with a Clinitron Rite-Hite bed, or a low air loss mattress, and (3) Mr. Woodward's pressure sores developed as a result from VA's failure to provide Mr. Woodward with an appropriate bed.

[6] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
2  253, 288-89 (1968).
3       In attempting to establish the existence or non-existence of a genuine factual
4  dispute, the party must support its assertion by "citing to particular parts of materials in
5  the record, including depositions, documents, electronically stored information,
6  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do
7  not establish the absence or presence of a genuine dispute, or that an adverse party
8  cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The
9  opposing party must demonstrate that the fact in contention is material, i.e., a fact that
10 might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,
11 Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and
12 Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also
13 demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is
14 such that a reasonable jury could return a verdict for the nonmoving party." Anderson,
15 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question
16 before the evidence is left to the jury of "not whether there is literally no evidence, but
17 whether there is any upon which a jury could properly proceed to find a verdict for the
18 party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251
19 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).
20 As the Supreme Court explained, "[w]hen the moving party has carried its burden under
21 Rule [56(a)], its opponent must do more than simply show that there is some
22 metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Therefore,
23 "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
24 nonmoving party, there is no 'genuine issue for trial.'" Id. 87.
25       In resolving a summary judgment motion, the evidence of the opposing party is to
26 be believed, and all reasonable inferences that may be drawn from the facts placed
27 before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at
28 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A. Expert testimony and appropriate disclosures

An expert witness who is retained or specially employed to provide expert testimony at trial must provide the opposing party with a written report, prepared and signed by the witness, unless otherwise stipulated or ordered by the court. Fed. R. Civ. P. 26(a)(2)(B). For experts who are not required to prepare a written report, the party must provide a disclosure containing the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C).

If a party fails to provide information as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, or at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001) (upholding the lower court's decision to exclude expert testimony when the written report was disclosed two years after the discovery period and twenty eight days before trial). Exclusion of untimely expert evidence is proper if the delay is neither harmless or substantially justified . Fed. R. Civ. P. 37 Advisory Committee Notes (1993); Yeti, 259 F.3d at 1106 (holding that a mistaken belief of disclosure procedures does not substantially justify a failure to disclose information); Goodman v. Staples the Office Superstore, LLC, 644 F.3d 817, 827 (9th Cir. 2011) (holding that a party's failure to read the court's scheduling order did not substantially justify the failure to properly disclose an expert's written report); Torres v. City of Los Angeles, 548 F.3d 1197, 1213 (9th Cir.

2008) (holding a party who fails to make appropriate disclosures under Rule 26(a)(2)(B) has the burden of showing the deficiency was either substantially justified or harmless).

The government argues here the Plaintiff does not have expert testimony sufficient to establish the applicable standard of care, let alone whether breach of that standard caused Stanley Woodward's pressure sores.  In Plaintiff's disclosure statement, she retained expert witnesses Dr. Samuel Louie, and Dr. Holly Kirkland-Walsh.  Plaintiff also named herself, Angela Castro, Dr. Steven Linder, Renee Ota, Dr. Walton Roth and Dr. Jonathan Strayer, as non-retained experts.[7]  For the reasons outlined below, however, Plaintiff has plainly failed to properly disclose any retained expert. Moreover, as set forth above and also discussed in more detail below, the government has provided declarations from Plaintiff's non-retained expert witnesses, Drs. Strayer and Linder, stating that they did not form medical opinions during the course of their treatment.  Consequently, Linder or Strayer cannot provide any competent expert testimony, either.

### 1. Parties are required to provide written reports for retained or specially employed experts.

Plaintiff will not be allowed to provide evidence through the retained experts she purported to disclose, Samuel Louie and Holly Kirkland-Walsh.  The government argues that Rule 37 should bar Plaintiff from using her retained experts to provide expert testimony because Plaintiff's expert disclosures were inadequate.  Plaintiff's disclosures failed to include: (1) a written report <u>prepared and signed by the expert</u>, (2) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition, and (3) a statement of the compensation to be paid for the study and testimony.  See Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  Instead, Plaintiff has only provided defendant with a brief overview of what she expects the expert to testify about.  Also, Plaintiff represented that the written reports and "previous testimony and

---

[7] Plaintiff did not disclose Angela Castro, Renee Ota, or Walton Roth, as experts regarding the standard of care.

7

compensation will follow." ECF No. 30 at 1-2.  Plaintiff has yet to provide the government with the expert reports, a list of prior testimony, or a compensation disclosure.

Plaintiff's untimely opposition does not even mention these deficiencies, let alone attempt to provide any justification or show how the deficiencies were harmless.  (See generally ECF No. 35.)  Therefore, Rule 37 sanctions are appropriate to bar Plaintiff from providing evidence from her retained experts, Louie and Kirkland-Walsh.  Fed. R. Civ. P. 37(c)(1); see Torres, 548 F.3d at 1213; see also Goodman, 644 F.3d at 826.

### 2. Treating physicians are exempt from report requirements to the extent they form their opinions during the course of treatment.

A treating physician is one expert that does not have to provide a written report. Goodman, 644 F.3d at 826.  However, a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his or her opinions were formed during the course of treatment.  Id. (determining that exclusion of expert evidence is appropriate in future cases when a party fails to adhere to Rule 26(a)(2)(B) requirements for a treating physician who is providing expert opinions formed after treatment rendered).

First and foremost, it appears that two of Plaintiff's non-retained experts, Strayer and Linder, in fact formed no opinions during the course of the treatment they provided to Stanley Woodward.  In Strayer's declaration, he admits he "did not form any opinions regarding the cause of Mr. Woodward's sacral pressure wound when [he] treated Mr. Woodward in 2009."  ECF No. 31-3 at 2.  Moreover, Linder's declaration also states that after reviewing his notes from that time "[he] does not recall specific opinions [he] had in 2009 regarding the cause of Mr. Woodward's pressure sore."  ECF No. 31-4 at 2. Consequently, it is clear that to the extent Strayer and Linder can provide any relevant opinions, they can do so only as to conclusions reached after their own treatment ended. Since that goes beyond the role as a treating physician, neither Strayer nor Linder are

///

8

exempt from Rule 26(a)(2)(B)'s written report requirement.  See Goodman, 644 F.3d at 826.

Plaintiff has failed to show that the deficiencies in her expert disclosures for Strayer and Linder are substantially justified or harmless.  In Plaintiff's untimely filed opposition, her counsel completely failed to address the issues raised by the Defendant about inadequate disclosures.  Therefore, Plaintiff failed to substantially justify the inadequate disclosures, or show that the inadequacies were harmless.  See generally ECF. No. 35.

In sum, Plaintiff was responsible for providing written reports under Rule 26(a)(2)(B) for both Linder and Strayer.  See Goodman, 644 F.3d at 826.   No reports were ever disclosed to the government, and Plaintiff failed to justify the deficiencies or explain how the deficiencies were harmless.  See Torres, 548 F.3d at 1213.  As a result, Plaintiff cannot use either Linder or Strayer to provide expert testimony.  See Fed. R. Civ. P. 37(c)(1).

### 3. Appropriate additional disclosures to expand an expert's subject matter

Plaintiff also disclosed herself as an expert who will provide expert testimony relating to "the effect that the subject wound injury to Stanley Woodward had on his respiratory system and function."  (ECF No. 30 at 3.)  The government argues that Plaintiff should have been classified as a retained expert and therefore should be precluded from offering at testimony on grounds that she failed to make the disclosure required under Rule 26(a)(2)(B).  Plaintiff listed herself as a non-retained expert, however, and made disclosures accordingly.  Even though Plaintiff is a self-interested party, she was neither "retained" nor "specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B).  Expert testimony from Plaintiff therefore cannot be precluded on grounds that she failed to provide the government with a written report.

Non-reporting expert witnesses only need to disclose the subject matter they are expected to present evidence under Federal Rule of Evidence 702, 703, and 705, and a

summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). Accordingly, Plaintiff disclosed that she would be presenting evidence regarding the "effect that the subject wound injury to Stanley Woodward had on his respiratory system and function." ECF No. 30 at 3. Plaintiff's education and work experience as a respiratory therapist could arguably qualify her as an expert in such respiratory matters. Plaintiff claims she can consequently provide expert testimony "that the wound injury caused difficulty with Mr. Woodward's breathing," and claims she formed that opinion based on "her own observations, review of Mr. Woodward's medical records, and review of the deposition of Karen Blair". (Id.) Therefore, Plaintiff's initial disclosures were adequate for Rule 26(a)(2)(C) purposes.

Plaintiff's untimely opposition nonetheless raises other issues regarding Plaintiff's expert testimony. First, in Plaintiff's declaration offered in opposition to the government's Motion, she expands her scope of subject matter to include the appropriate standard of care, breach from the standard of care, and causation of Mr. Woodward's pressure wound in order to contradict or rebut evidence identified by Karen Blair.

The Court's operative scheduling order made it clear that any initial disclosure of expert witnesses was to be served upon all other parties not later than January 7, 2016. (ECF No. 11 at 9.) Additionally, under the terms of the scheduling order if a party intends to use additional expert evidence solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C) then those supplemental disclosures must be made within thirty days after the other party's initial disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). Here, Plaintiff's disclosures, made by way of her opposition to this Motion, were made on April 7, 2016, over ninety days after the government's initial disclosures of Karen Blair. (ECF No. 35-3.). Consequently, these are clearly untimely as either initial or supplemental disclosures.

Second, Plaintiff's opposition itself was incomplete and filed late. Plaintiff failed to file a response to the government's statement of undisputed facts, as was required under Local Rule 260(b). Also, Plaintiff's opposition was filed over three weeks past the

1  deadline set forth in the scheduling order.  According to Plaintiff's counsel, that
2  untimeliness was a result of his confusion between the requirements of Local Rule
3  230(c) and the deadlines set forth in the Scheduling Order.
4      As indicated above, however, Plaintiff's counsel had already been strongly
5  admonished that any further failure to adhere to this Court's rules and deadlines would
6  not be tolerated.  Plaintiff had previously failed to timely respond to the government's
7  request for admissions because Plaintiff's counsel was too preoccupied with other
8  matters concerning his "primary client."  ECF No. 15-2 at 2.  As a result, the government
9  filed a Motion to Dismiss for failure to prosecute on grounds that Plaintiff's failure to
10 respond to the government's request for admissions resulted in the salient issues being
11 admitted as a matter of law.  Plaintiff was nevertheless given the opportunity to file a
12 Motion to Withdraw Admissions before the assigned magistrate judge.  Plaintiff's counsel
13 proceeded to file that motion with the wrong judge because he "misread or
14 misunderstood what he was supposed to do."  Ultimately, while Plaintiff was given leave
15 to withdraw the admissions, he was warned that similar inattention to rules and
16 deadlines in the future would not continue to be overlooked.  (ECF No. 24.).  Given this
17 clear and unmistakable warning, Plaintiff's attempt to tardily expand the scope of her
18 own expert testimony will not be permitted.
19     Plaintiff's counsel has also failed to show that his failure to adhere to proper
20 expert disclosure procedures was either substantially justified or harmless.  Plaintiff does
21 not provide any justification for her untimely expert disclosures.  (See generally ECF
22 No. 35.)  The only excuse Plaintiff offers is her counsel's mistake with confusing Local
23 Rule 230(c) with the Scheduling Order.  This is not an excuse that substantially justifies
24 the inadequacy of her expert disclosures made on January 7, 2016.  Goodman, 644
25 F.3d at 826 (determining that the failure to read the court's scheduling order does not
26 substantially justify deficient expert disclosures).  Plaintiff therefore has no proper
27 argument to justify her inadequate expert disclosure.
28 ///

After considering the repeated errors made by Plaintiff's counsel, sanctions to exclude Plaintiff from providing expert testimony regarding the standard of care, breach, and causation of pressure wounds, are appropriate. See Fed. R. Civ. P. 26(a)(2)(D)(ii); see also Fed. R. Civ. P. 37(c)(1). Although Plaintiff can still provide expert testimony consistent with her original disclosure, that pertains only to the effects Mr. Woodward's pressure sores had on his respiratory system, and her testimony by definition would not extend to the salient issue of whether any VA provider's care fell so below the applicable standard of care to qualify as a predicate for loss of consortium damages on Plaintiff's behalf. Consequently, with the permissible scope of potential expert opinion now defined, the Court next addresses whether the testimony Plaintiff has identified can possibly be adequate to state a viable claim.

### B. Expert testimony is required to prove standard of care, breach and causation.

The Federal Tort Claims Act ("FTCA") provides the exclusive remedy for tort lawsuits against the United States, and allows the United States to be held liable for the torts of a federal employee acting in the course and scope of employment in the same manner and to the same extent as a private employer under state law. 28 U.S.C. § 2679. California law governs this FTCA case. 28 U.S.C. §§ 1346(b)(1), 2674.

Loss of consortium requires the Plaintiff to prove: (1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss was proximately caused by the defendant's act. Hahn v. Mirda, 147 Cal. App. 4th 740, 746 n.2 (1998). A cause of action for loss of consortium, is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse. Id. at 746. Plaintiff submitted her complaint alleging the negligent medical care provided by the VA resulted in pressure sores developing on her husband's lower back. Thus, we must determine the validity of the medical malpractice cause of action upon which the loss of consortium cause of action is premised.

Under California law, in order to establish medical malpractice, the plaintiff must prove: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. Hahn, 147 Cal. App. 4th at 746 n.2 (citing Budd v. Nixen, 6 Cal.3d 195, 200 (1971) (superseded by statute on other grounds)). The standard of care in a medical malpractice case is a matter "peculiarly within the knowledge of experts." Johnson v. Superior Court, 143 Cal. App. 4th 297, 305 (2006) (quoting Sinz v. Owens, 33 Cal.2d 749, 753 (1949)). Therefore, expert testimony is required to "prove or disprove that the defendant performed in accordance with the standard of care" unless the negligence is obvious to a layperson. Johnson, 143 Cal. App. 4th at 305 (quoting Kelley v. Trunk, 66 Cal. App. 4th 519, 523 (1998)) (emphasis added). No genuine factual issues for trial exist when a defendant provides declarations from experts in support of their motion and when the plaintiff has not presented any expert evidence concerning required standard of care. Hutchinson v. U.S., 838 F.2d 390, 393 (9th Cir. 1988).

The government has met its initial burden by demonstrating an absence of a genuine issue of material fact. Plaintiff does not have any admissible evidence from expert witnesses to meet her burden of proving standard of care, breach, and causation in the underlying cause of action. For the reasons outlined above, Plaintiff cannot offer expert testimony from either Louie, Kirkland-Walsh, Linder or Strayer. Additionally, Plaintiff herself is restricted to offering expert evidence only on the effect the pressure sores had on Mr. Woodward's respiratory system, not on the salient question of whether any malpractice occurred. Therefore, the government has shown that Plaintiff does not have the expert testimony needed to establish the predicate malpractice for her own loss of consortium claim. See Johnson, 143 Cal. App. 4th at 305. The burden then shifts to Plaintiff to establish a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 586-87; see also First Nat'l Bank, 391 U.S. at 288-89.

Plaintiff's opposition was untimely and Plaintiff has failed to raise the required issue on fact on that ground alone. Even if Plaintiff's untimely opposition is considered, however, Plaintiff has still failed to show the existence of a genuine factual dispute. Plaintiff merely declares the opinions regarding causation made by Defendant's expert witness, Karen Blair, are "not correct." ECF No. 35 at 4. Plaintiff's counsel also argues that "Claudia Woodward's accompanying Declaration speaks for itself," and that "[i]t leaves no question that the Spinal Care Unit, and specifically Nurse Blair, breached their duty to Stanley Woodward . . . resulting in the described pressure swore wound". Id. As set forth above, however, Ms. Woodward is barred from providing expert testimony on those matters. In addition, Ms. Woodward's conclusory opinion that "[t]he failure to order the proper bed and mattress fell below the standard of care" is insufficient in itself to raise a triable issue of fact that can withstand summary judgment.[8] (ECF No. 35-3 at 3.)

Even with all reasonable inferences that may be drawn from the facts, drawn in favor of the opposing party, Plaintiff does not have the required expert evidence to demonstrate the applicable standard of care.[9] See Anderson, 477 U.S. at 255; see also Johnson, 143 Cal. App. 4th at 305. Summary judgment for the government is appropriate in this case because a medical malpractice claim without the required expert testimony concerning standard of care presents no factual issues for trial. See Hutchinson, 838 F.2d at 393.

---

[8] It is also unclear how Plaintiff's experience as a respiratory therapist would qualify her as an expert regarding the appropriate standard of care for treating pressure sore wounds. However, this point is moot and need not be considered.

[9] Plaintiff's remaining non-retained experts were not disclosed to testify about the standard of care or causation. Angela Castro and Renee Ota were only disclosed as non-retained experts who "will be asked to testify about [their] observations" while they were involved, or assisted, in the care and treatment of Mr. Woodward. In other words, Castro and Ota are expected to provide lay witness testimony or opinions not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 of the Federal Rules of Evidence. Fed. R. Evid. 701(c). Plaintiff also disclosed Mr. Woodward's psychiatrist, Walton Roth, as a non-retained expert. However, Plaintiff disclosed Dr. Roth as a non-retained expert who will "be asked to testify about his observations of Mr. Woodward and the mental and emotional effects" Mr. Woodward suffered. Thus, Dr. Roth was not disclosed as an expert regarding standard of care or causation of pressure wounds.

**CONCLUSION**

For all the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 31) is GRANTED. The matter having now been concluded in its entirety, the Clerk of Court is directed to enter judgment for the government and close the file.

IT IS SO ORDERED.

Dated:  September 19, 2016

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE